Our first case of the day is 117952 Marcus Coleman versus East Joliet Fire Protection District, etc. et al. Are you ready to proceed? Please ready. My name is Roman Oprey. I represent Marcus Coleman who is the successor administrator to the estate of Coretta Coleman. I'm asking this court to reverse the Third District Appellate Court which affirmed the trial court granting summary judgment as to all defendants based upon the public duty rule in that the special duty doctrine applies and that the fourth element of the special duty doctrine exception could never be satisfied because Mrs. Coleman wasn't within the direct control of the municipality and she initiated the circumstances. So the court can follow where I'm going. I would like to do this in different stages. I would like to first address the fact that I believe that there is a duty under the EMS Act and the ETS Acts. Then I will address the public duty rule and then I will go back to other reasons why I think that there are duties. Regarding the first issue to me, an important issue is I do believe that there is a duty under these circumstances that the legislature created under both the EMS Act and the ETS Acts. The EMS and the ETS Acts both provide that there is responsibility if there is willful and wanton conduct. They wouldn't do so, I don't think the legislature would do so under those circumstances, unless they intended that to mean exactly what it says. I'd like to give you an example. If the legislature knew that the public duty rule applies and the special duty exception applies, then the legislature was aware of the fact that any time a person initiates contact there cannot be a recovery for willful and wanton conduct. What that would mean is that if a person fell down the stairs at home and called 911 for help, fell in the bathtub, had a stroke, had a heart attack, had an aneurysm that ruptured, was a victim of a rape at home, a victim of a shooting and needed 911 help, that person could never, ever, ever have a cause of action if there was willful and wanton conduct on the part of the municipal employees. That doesn't make sense. That cannot be the intent of the legislature then because only then what would happen is you can never have a special duty exception, you would not need responsibility under the EMS Act or ETS Acts unless, unless, unless you had a cause of action and there was a duty for the cause of action. It just wouldn't make sense. Just so I understand your argument, the EMS statute that you're referring to is an immunity statute, correct? It is. You seem to suggest it creates a duty. Duty and immunity are obviously different things. Could you address that? Absolutely. Duty and immunity are different things. I think under these circumstances, oh your honor, look, we know that your honor, you cannot have a tort unless you have a duty. We all accept that, we all understand that. I'm stating that it's an immunity though, I'm sorry, there is a duty created under these circumstances there, otherwise the legislature would not have provided for responsibility for willful and wanton conduct. There would be no reason to have it. You wouldn't need a judge in circumstances in a 9-1-1 setting. Justice, I'm sorry, you wouldn't need it. But of course, we understand the difference between an immunity and a duty. What do we do with Zimmerman? The Zimmerman case. It would seem that the court expressly addressed the continued viability of the public duty rule in Zimmerman. That's a really good point, Judge, because I would like to use actually the reverse of Zimmerman to apply. What happened in Zimmerman, your honor, is where the conflict was, in Zimmerman, it was the plaintiff who wanted to avail himself of the special duty exception to override what the legislature did with the Tort Immunity Act. You see, we have just the opposite situation right here. As a matter of fact, and I want to apologize to counsel, I made a mistake in my reply brief, but I want the court to be aware of too, where I stated the legislature did not amend the ETS Act since Donovan came down and going back to Huey. No. What happened is this, Judge, if I may please, with this. In American National Bank and in Abruzzo, this court determined that under the EMS Act, there is responsibility if it's willful and wanton conduct if you don't locate the patient. That's a part of the act. It's the flip argument that Zimmerman would apply to. Where the problem came with Zimmerman, Judge, Justice Thomas, what happened with that was in Zimmerman, it's the plaintiff who wanted to state that the special duty doctrine applies. That, if that were true, would override what the legislature already did, and you can't do that. You can't have the plaintiff invoking a public duty rule to override what the legislature did. But that case also gave a principled analysis as to why the rule survived both the abolition of sovereign immunity and the adoption of the Tort Immunity Act, right? It did. It did, Judge, and this court... And wouldn't that rationale apply in this instance? I think it does, but I think the court also stated, I do think that the court also stated that we don't know if we have to still have the public duty rule because this court, Judge, hasn't addressed the issue since it hasn't. In DeSmet and Aikens, this court has, because the court can exercise its prerogative, which it did, this court has then said that, well, because we could decide the case based on the Tort Immunity Act, that's what we're going to do. I think that's where Justice Tice was coming from, you know, the analysis provided was that the crucial distinction is between having a duty in the first instance and having immunity from liability. Yes, it is. Justice Thomas, what I'm stating is under the EMS Act and the ETS Act, my position is the duty was created under the Act. Otherwise, there would be no sense in having a immunity from responsibility unless you had a duty. So, with this, has this been done before? It has. The court before with Callaway v. Kinkler, in Callaway, of course, that was the case with the Domestic Violence Act. In Callaway, the defendants also raised the defense that the public duty rule should apply, and if the public duty rule applies, the public duty rule, special exception applies, if the special duty exception applies, in Callaway, where the woman was a victim of domestic violence, she would not have had a cause of action. But the court said, nope, under the Domestic Violence Act, there was a cause of action that was allowed because there was responsibility that could be imposed against police officers for willful and wanton conduct. And I'm stating it's analogous. We're not on all fours with the Domestic Violence Act. There are minor exceptions, minor differences, but it's the same analogy. This court could say that this court chooses that under the statute itself, our statute, EMS, ETS, the Domestic Violence Act there, there's a duty imposed. And that's what I'm asking the court to do. If I could then address the public duty rule itself, which we're talking about now, that's the second area that's pretty important, I'm sure, for this court. I am adhering to the principle that it was abolished, the public duty rule, was abolished with sovereign immunity by our Constitution in 1970, Article 13, Section 4. And Justice Tice did direct your question to that. Isn't there a difference between immunity and duty? Sure there is. And forgive me for being so bold, but I'm saying it's the emperor's new clothes. When you have a situation right here in the States where any single person who had to call 911 for emergency medical services then could never avail themselves of a remedy if there's willful and wanton conduct, I'm stating that that is sovereign immunity. I'm sorry, but it's the same dog-longer-tail, and I know the court, I'm hoping that the court will address that issue. I think it's sovereign immunity that should have been abolished by the Constitution. There are other areas where I think a duty could be... Unless there are questions on that issue, I think my point is pretty clear, though. If we then state why I think that there could also be... ..duties, a duty that is old. I addressed the Jane Doe case, and I understand Jane Doe 3 versus McLean County School District. I understand that there are differences in the case. I understand that in Jane Doe 3, we have to protect children. I understand that. There's not a parent in the world who wouldn't do anything for their children. We must protect children. We know that. I'm stating, though, we also have, in a 911 emergency setting, people who are also in life-threatening situations in need of help. And I don't think it's a far extension to state that in a 911 setting, because of the EMS Act and the ETS Act, we can also extend the same protections to them by finding a duty under the statute itself. So I think that that's one way to find a duty. Then I also raised in my briefs that there are voluntary activities that the 3rd District kind of shot me down on, that all of the defendants were volunteers under the circumstances of this case. The appellate court said, well, they really can't be volunteers because they had to perform their duties and their jobs. And it's not clear to me if that's really the law, because I know, we know, that under certain cases, volunteer status was found to exist under the restatement of torts against municipal employees. We know that from Torres versus City of Chicago, where the police officers deterred help from coming to the shot victim. We know that from, I believe, it's Blankenship, where our 3rd District Court, Justice Slater at the time, brought up the same, yeah, Blankenship versus Peoria Park District. They didn't decide on that, but said there's no question that the lifeguards could be volunteers. Well, I don't know if we look at the employment status of the defendant to determine if they're volunteers or not, but rather the scope of the undertaking. And the 3rd District also commented, though, in Justice Holtage's opinion, well, if we state that volunteers have a duty under these circumstances, that would override the public duty rule. So we get back to the public duty rule. But I think what we have to look at is the undertaking that the defendants were involved in to see if there were volunteers and a duty was created for that reason. May I ask you a question? Yes, ma'am. Moving back for one moment. Yes, Justice. The duty that you are arguing exists here. Are you saying that it arises from the statute that we agreed is an immunity? Or are you arguing that it arises after the application of the traditional four-part test and a duty analysis? Which is it? I'm saying both or three. I think we could have duties for different reasons, Justice Feist. I believe we could have duties because of the foreseeability test. I believe that we could have duties under the statute itself. I believe there could be a common law duty also just because of the relationship between the parties and the foreseeability test, the four-prong. I don't think one is exclusive of the other, Justice. I think we have different... That's why there are different avenues to go here to find a duty was owed to Coretta Coleman under these circumstances. It could be because the volunteers increased the harm to her and someone could say, well, where's the voluntary activity? Well, when Hellis, the paramedic, called Orland Dispatch and reported there was no patient when there was no factual basis for stating there was no patient instead of just stating no one answers the door or something to that effect, that he exceed whatever his job was that was at a volunteer activity or with Lori Zahn, the dispatcher from Will County. If her job was, as the defendants stated was, only to transfer the call, just transfer the call, only transfer the call to Orland Dispatch. If that's the case, when the calls came from the neighbors, from Mrs. Mewing, from Reverend Brown, when those calls came, if those calls were just transferred, wouldn't the address show up on the screen at Orland as it did when Coretta Coleman called? And then did Lori Zahn go farther than she should have by calling on her own instead of transferring the calls if that's the case? So I think there's a voluntary activity there that increased the risk of harm to Mrs. Coleman because time was of the essence because she needed oxygen. But weren't they under a duty to transfer those calls? At what point does it exceed the duty, Justice Garment, is my point. At what point did it exceed the duty? If it's only to transfer the call, the transferring of the call would have taken place by hitting the buttons, transfer the call. But what Lori Zahn did is didn't transfer those calls. She, of her own volition, then instead of transferring the calls, as they're maintaining she must do, she gets on the phone and calls herself. And when she calls herself to Orland Dispatch, the transferred calls aren't ringing up on the computer screen at Orland Dispatch with given address. Orland Dispatch then dispatches to the wrong address. And not only that, when Lori Zahn called Orland Dispatch, Lori Zahn doesn't give the complete address. So if she's taking it upon herself, Lori Zahn, instead of transferring the calls to Orland, she'll make the calls. Now they don't know where the calls are coming from at Orland, and what is she doing? She doesn't give the full address. So I think that they increase the harm, the risk of the harm to her. And those activities were voluntary activities because that's not what she's maintaining she was supposed to do. So I think we hit the major points that I was trying to hit. Oh, in case it comes up. If there is a conflict between the Tort Immunity Act as the defendants asserted, but the appellate court nor the trial court, no one ruled on this issue. Based on Brousseau versus the city of Park Ridge, I believe that the EMS Act and the ETS Acts would certainly control because they're more specific and more current in time than with the Tort Immunity Act. But those are the major points I wanted to hit. Unless there are any questions from the court, I'd like to reserve my time for rebuttal. I kind of lost you on that voluntary duty. My recollection at least was that the first ambulance that went out went to the right address that nobody answered and then the calls started and then the second one that went out, they didn't have drive or court or something in it and went to the wrong one. When did the voluntary duty start? Sure, let's deal with Laurie Zahn. When Laurie Zahn called Orland at that point, Your Honor? When she did more than just transfer. Absolutely, yes, sir. So all of that follows after that as well? Oh, yes, sir, oh, yes, sir. Oh, yes, sir, because that did not have to occur if her job was to truly transfer the call. But then when Orland received the call, were they volunteers or were they performing a duty? No, and Justice, that's a very fair question because I was in my mind debating this thing over and over and over and over. I could clearly show that East Joliet went too far. I could show that Bull County and Laurie Zahn went too far. I'm more troubled with, for myself, on my side of the case, being very frank with you, on the part of Orland at that part because Orland then dispatched, albeit to the wrong address, nor though, Justice Karameier, nor did Orland tell that second ambulance that the first ambulance was already there and left and my goodness, that would make a heck of a lot of a difference if they knew someone was already there and left. So voluntary undertaking is applicable then, in your opinion, when a defendant has a legal obligation to perform or are you saying there wasn't any legal obligation? No, actually, Justice Thomas, that's a very good point. I'm stating that according to the restatement itself, 323, it does not state who it applies to this way, but it says the restatement says gratuitously or for consideration and it is not limited to non-government employees, so we don't know how far it goes. So what we have to look at is, what was the scope of the undertaking? What were these people supposed to do and did they do something beyond that? Were their actions taken beyond what they were supposed to do? And I'm stating when Hellis reported that there was no patient, when there was no basis for that, that was not a part of his job. He should have followed his job duties and just said that we don't know if anyone is here or not. No one's coming to the door. And when Lori Zahn called back to Orland, Lori Zahn was, if her job description is as they say, her job was to transfer those calls and then that call gets routed to Orland, but she didn't do that. She didn't transfer Mrs. Mueling's call nor did she transfer the call from Reverend Brown. Lori Zahn instead took it upon herself to call and then gave the incomplete address. So there's a distinction then between having a, as you put it, what they were supposed to do and there's a distinction between doing what they were supposed to do in, for lack of a better term, a negligent fashion and going beyond what they were supposed to do that would consequent a voluntary undertaking? I think so, Judge. Going beyond what you're supposed to do, yes, sir. Even though going beyond is what you're saying they did wrong, right? Yes, that's correct. That's correct. Any further questions? Time has expired. Yeah, thank you. Thank you. Good morning. May it please the court, counsel. My name is Kevin Clancy and I represent Will County and Lori Zahn in this matter. I'd like to start by just addressing very briefly the voluntary undertaking issue that I'm going to phrase. Lori Zahn did not engage in a voluntary undertaking by responding to the calls from the Muelings or Reverend Brown because her job required her to take those calls and her job required her to follow up on those calls. The ETS statute talks about a transfer method of transferring calls, but also a relay method of transferring calls. The relay method involves relaying information received from the calls to the appropriate agency. There's no testimony or no evidence in the record that Lori Zahn was doing something other than what she was required to do by her job duties. And in that regard, I think the Fickdell case and the Combs case provide that that was not a voluntary undertaking. In addition, the call from the Muelings was not a call for emergency medical services, so she wouldn't have transferred it to Orland. It was a call for police to come and assist the paramedics in entering the home. Plaintiff also discussed a number of sources of duty or what he believed would be a number of sources of duty, but I think that that sidesteps the central issue of if there is a duty, to whom is that duty owed? And for over 130 years in Illinois, the public duty rule was provided that a municipality's duty to preserve the well-being of the community is owed to the community at large, rather than to specific members of the community. The public duty rule was not abolished and could not have been abolished by the abolition of sovereign immunity or the enactment of the Tort Immunity Act because, as this court has explained, on at least 10 occasions in the past 20 years, duty and immunity are separate and distinct concepts under the law. They function differently and they affect different aspects of a legal claim. There are two distinct components of a legal analysis in any court claim. On the one side is the issue of whether there's a viable claim for liability to begin with, and that involves determining whether there's a duty, a breach of that duty, causation, and damages. That's where the public duty rule is applicable and the special duty exception. On the other side is the issue of whether there are any potential defenses to that liability, such as immunity. This court has stated in Zimmerman that this distinction between duty and immunity is crucial because only if a duty is found do we even get to the issue of determining whether any defenses are applicable. Likewise, this distinction between the two sides of the legal analysis and the tort claim is critical because the abolition of sovereign immunity impacted only one of those sides. As the court stated again in Zimmerman, the abolition of sovereign immunity, quote, merely aggregated a defense to any preexisting duty. In other words, the abolition of sovereign immunity impacted only that part of the analysis that deals with defenses to liability. It did not impact that part of the analysis where the public duty rule is, which is determining whether there's a viable claim for liability in the first place. Now, a plaintiff argues that none of this matters because public duty rule is really just another form of sovereign immunity by another name, but that's incorrect for a number of reasons. First and foremost, because this court held 47 years ago in the Huey decision that the public duty rule exists independent of statutory or common law concepts of sovereign immunity, and that remains the law in Illinois today. In addition, the fact that the public duty rule could in some circumstances, not in all circumstances, result in there being no liability for the defendant doesn't transform the rule into an immunity concept. There are other situations where a common law rule negates one component of the underlying claim, but that doesn't change it from being part of the underlying claim to immunity. And one example is the fireman's rule. When the fireman's rule applies, the common law fireman's rule, there's no liability going from a landowner to the emergency first responders. This court stated in the Roe versus J&M Forklift case that unlike an affirmative defense, the fireman's rule does not presuppose the existence of an otherwise valid cause of action, but goes to the threshold question of whether there is any duty in the first place. May I ask you a question, sir? In terms of the idea of duty versus the immunity. The public duty rule has been used, as you say, for 130 years. Municipal government employees have a duty generally to the public. Counsel argues that we should look at it, rather, in terms of traditional duty principles and a four-part test, a relationship test, or a foreseeability test. What's the harm of adopting that? Well, the harm in adopting that is that it creates a great deal of uncertainty and inconsistency in whether or not there's going to be a duty imposed. For example, in the 911 situation, Lori Zahn answers tens, hundreds, possibly hundreds of calls a day or a week. Every time she picks up that phone, she could potentially be exposing herself to a legal duty of tort responsibility pulling from her to the caller on the other end of that line. And we won't know until the court analyzes some years down the road whether those four factors apply. The public duty rule has served the state well, it's served the municipalities well, and I think it's functioned well. In addition, there is the special duty exception to the public duty rule that analyzes those factors. And I think that that's an adequate protection for those situations in which a duty should arise. Now, another reason why the public duty rule is not just another form of statutory or another form of immunity is because of the way the special duty exception works. The special duty exception looks at factors such as the relationship between the defendant and the plaintiff, the defendant's particular knowledge and the acts that that defendant takes or doesn't take that could give rise to a legal duty arising. Those are squarely duty concepts and they belong squarely in that part of the analysis dealing with the elements of the underlying claim for liability. If the public duty rule is really just another form of immunity, then the special duty exception is an exception to an immunity, not an exception to a duty rule. But this court wrestled with that and came to the exact opposite conclusion in the Zimmerman and the Heron Act decisions and held that special duty exception is not an exception to immunity. It belongs in that part of the analysis dealing with the underlying claim for liability. If there are no further questions, I'd pass my time along to my colleagues. Thank you. Thank you. Good morning, may it please the court, counsel, my name is Steven Donofo and I represent the East Joliet Fire Protection District and paramedics, Ellis and Mazur. Given my limited time, let me start out by addressing a few of the points raised by plaintiff's counsel in this matter. First, starting with the voluntary undertaking. The issue that he raises to this court that constituted the voluntary undertaking by my paramedics is that they called into Orland and said they had no patient and were returning the service. To me, that screams of being in the course of their duties. How else would the Orland Dispatch Center know that they're back and available for calls? To sit there and just merely leave the scene without identifying themselves as available to help deal with the tornado situation that was going on flies in the face of common sense. It's clearly part of their obligation to communicate with their dispatch center so that they know what's going on. Further, I think given that the voluntary undertaking aspect is a negligence standard, I think we're beyond that given the Tort Immunity Act since that would seem to protect paramedics, and if we use the EMS Act, protect them as well from willful and wanton, protect them as well from negligence and apply only for willful and wanton conduct. In light of that, I don't think there was a voluntary undertaking. Everything that they did that day was in accordance with their duties. Further, counsel raised that the EMS Act somehow created the duty. I don't believe that was the intent of the legislature when they passed the act. I believe that is an immunity for those entities and applies to both private and public. Yes, but it's a question on that point. And what does the legislature mean? Why would there be a need for immunity at all if there was never going to be a duty because of the public duty? The need for immunity is that the Tort Immunity Act applies only to units of local government. Given that we have private and public sector individuals providing EMS services to the general public, the legislature had to take some action to protect both the private and public EMS providers from negligence standards under the same banners as the Tort Immunity Act. That's why I think the legislature made that clear. It's a public and private application. Tort Immunity Act only applies to public entities. But even to the extent if you believe it does create a duty, that duty has to go to the public at large. It can't go to each individual. Paramedics and employer departments can't be the insurer of the well-being of each and every individual within their department's coverage area. Using that, it falls, in my opinion, to the fact that we then have to fall back to the public duty aspect and the public duty analysis. And there is no doubt that the public duty rule is alive and well in Illinois. And had the legislature, who's presumed to keep up with the changes and the decisions of this court, had felt that the decisions in Huey or Zimmerman were not appropriate, they've had 47 years to enact some legislation that would go and change the application of the public duty rule. They can enforce duties against units of local government if they so choose. And there's mechanisms that exist in society. If individuals are not performing their duty to the satisfaction of the general public, through elections, there could be changes. And through those changes, we can get changes in how people respond. The public duty rule, at times, does serve to bar causes of action. There's not every cause of action that can be subject to redress. Units of local government cannot be in the business of ensuring the well-being of their individual citizens. They don't have the resources. And if we open the floodgates to this type of analysis, what's foreseeable then? When you ask counsel, what's foreseeable? It's hard for a firefighter, a first responder, or a 911 operator to sit there and analyze the foreseeability. No two calls are ever alike. I think the public duty rule serves to allow these individuals to perform their job without the constant fear and have to go through the constant analysis of what's foreseeable if I do or don't do something. They know that they owe a duty to the general public. And there are situations that can arise where a 911 operator, a paramedic, can be sued, even in light of the public duty rule. Once a paramedic starts providing treatment, I think the special duty exception applies. They're now under their direct control. There's situations with 911 operators where they give medical directions over the phone to individuals. Arguably, that may constitute direct control. So contrary to what Plaintiff's counsel has asserted to this court, application of the public duty rule never prevents somebody absolutely from being able to file a lawsuit. It's just certain expectations, certain standards that have to be met before they're able to do it. You need a duty before we get to the immunity. Therefore, it's our opinion that the Third Appellate District did get it correct when they found that the public duty rule served to bar this cause of action. It cannot satisfy the fourth prong to all defendants of the special duty exception. I argue they can't satisfy the first prong as the Orland, as well as the East Joliet Fire Protection District. In this case, it is clear that the public duty rule should remain in effect. It allows our first responders to go out and do their job in a manner that sets their minds free from having to worry about simple mistakes, foreseeability, things of that nature. In light of my time, I'm gonna turn the rest of my time over to counsel if there are no other questions. Thank you. Thank you. May it please the court. My name is Kim Carney, and I represent Orland Fire Protection District and Eric Johnson. Your honors, we respectfully submit that the harmful impact that judicial abolition of the public duty will have on local governments, the vital functions they serve, and ultimately on the taxpayers compels continued adherence to the existing rule. One of the most important considerations in keeping the public duty rule is to preserve the already limited government resources that are available to protect the public health, safety, and welfare. The financial burden imposed by broader exposure for liability can be expected to force changes in the kind, scope, and level of emergency services that many municipalities will be able to offer their citizens. At the very core of the separation of powers doctrine is this principle that the court should not interfere with or second-guess the policy decisions made by other branches of government, particularly with regard to the proper allocation of community resources and services. As the Supreme Court of Connecticut recognized in the case Shore v. Town of Stonington, the public interest is not served by allowing a jury of laypersons with the benefit of 20-20 hindsight to second-guess the exercise of a public employee's discretionary decisions. If that is allowed, defense costs alone will impose tremendous financial hardships on municipalities and other government agencies. Even if tort immunity applies to protect a municipality from a judgment, defense costs will soar. Most lawsuits will survive pretrial dismissal or summary judgment motions because the elements of foreseeability and causation, which are almost always questions of fact, will come to replace duty as the dispositive issue. As reflected by the several amicus briefs filed in support of the defense interests in this case, we know that today municipalities and government agencies of Illinois can ill afford the severe depletion of government resources and the disincentive to enter public employment, as well as the burden on the judicial system that abolition of the public duty rule would bring about. We respectfully submit that if those outcomes are to be risked, it should be the Illinois General Assembly that makes that decision. Where significant matters of social and public policy are at issue, this court has deferred to the legislature to create new law. For example, in Charles versus Siegfried, the court stated that the primary expression of Illinois public and social policy should emanate from the legislature because the members of the General Assembly elected by the citizenry are best able to determine whether a change in the law is desirable and whether it is workable. Charles went on to state that the General Assembly is the only entity with the power to weigh and properly balance the many competing societal, economic, and policy considerations involved. The tremendous exposure for liability, damages, and defense costs that will be imposed if the public duty rule is abolished has not been factored in to fiscal planning by Illinois government entities that are already facing significant economic challenges and pension crises. Given the magnitude of the consequences, we submit that it should be the General Assembly that decides whether to strip government entities of the important fiscal protections the public duty rule was intended to provide. Thank you. If the court has no questions for me, I would like to conclude by saying that the appellees ask the court to affirm the circuit court's decision in their favor and the decision of the appellate court  Thank you. Thanks, Officer. There are safeguards built into the system and the sky didn't fall in 1959 with Molitor versus Caneland when sovereign immunity was effectively abolished by case law before the Constitution. Safeguards are that there's foreseeability before there can be a tort claim. If those prongs of a test are met, the Tort Immunity Act is still in existence as a safeguard where unless the conduct somehow is outside of the Tort Immunity Act, there isn't going to be immunity. Under the EMS Act, there's a safeguard because under the EMS Act, unless the conduct is willful and wanton, there's immunity. There's immunity under the ETS Act the same way unless the conduct is willful and wanton, there's going to be immunity. There's the further safeguard if we just follow the Constitution, Article 13 in the Constitution where the legislature can then pass any immunities that they want to. I went to the extreme in my brief and I stated that if the legislature is concerned about this, the legislature can just state that in a 911 situation, there's no responsibility for willful and wanton conduct or negligence. That can be written out as has been done in certain sections of the Tort Immunity Act. So the world's not going to come to an end and the sky's not going to fall if you state that either the public duty rule is gone or if you state that there is a duty that's owed in the Coleman case based on the EMS Act. I went back and looked at languages I was listening to counsel from the EMS Act, how it's been interpreted before by this court in Abruzzo. And what was stated was, in your review of the EMS Act, it's a comprehensive omnibus source of rules governing the planning and delivery and evaluation and regs of emergency medical care for people. That's what we're talking about. I think there's a duty, of course, as I'm arguing under the EMS Act, that duty can be there, the case can proceed, or you can state that the public duty rule is gone and the case still proceeds. But that's your call. I don't know what else I could say on the issues. Counsel made a comment about Zimmerman, and Justice Thomas, you brought up the question before on Zimmerman too. We can't lose sight of the fact that it's the reverse argument in Zimmerman that should be applying here. It's Zimmerman, the plaintiff, who wanted the special duty doctrine exception to apply to get around toward immunity. They can't do that. That's a breach of the different branches of government power that you have. You can't do that, you can't do that. We're not stating that at all. We're stating, as a matter of fact, quite the contrary and with stronger reason. For us, it's because this court found before that there, I think, is an obligation and a duty to locate a patient under the EMS Act. The legislature is aware of that. That is a legislative enactment. That's part of the EMS Act. You have to find the patient. And now, if the legislature said that that's a part of what the EMS Act is, should this common law public duty concept that the court is invoking take away that legislative enactment? So I'm asking you folks to please reverse the third district, remand the case, and let me get on with the case if we can. If there are no questions, I'm gonna sit down. Thank you, counsel. Thanks for your patience. Case number 117952, Marcus Coleman, et cetera, versus the East Joliet Fire Protection District, et cetera, et al., will be taken under advisement. As agenda number eight, Mr. O'Kree and Mr. Clancy, Mr. D'Onofrio, Ms. Kearney, thank you for your arguments today. You are excused at this time.